**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN SHOCK,<br><br>          Plaintiff,<br><br>          v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY,<br><br>          Defendant. | Civil Action No. 16-3410 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on Defendant E. I. du Pont de Nemours and Company's ("Defendant") Motion to Dismiss Counts One, Two, Three, and Five of Plaintiff John Shock's ("Plaintiff") Third Amended Complaint. (ECF No. 22.)[1] Plaintiff filed opposition (ECF No. 25), and Defendant replied (ECF No. 27). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1.[2] For the reasons stated below, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

**I.    Background**[3]

    Plaintiff began working for Defendant as a research chemist in 1974. (Third Am. Compl. ¶ 4, ECF No. 17.) Between approximately 2001 and 2012, Lyla El-Sayed ("El-Sayed") was

---

[1] For clarity, the Court references the operative pleading as the "Third Amended Complaint."

[2] Defendant requested oral argument in its Reply Brief. Upon review of the parties' submissions, however, the Court finds oral argument unnecessary and declines Defendant's request.

[3] For the purpose of the instant motion, the Court accepts all factual allegations in the Third Amended Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Plaintiff's supervisor. (*Id.* ¶¶ 9, 12.) In January 2012, Plaintiff was assigned a new supervisor. (*Id.* ¶ 25.) El-Sayed, however, continued to function as Plaintiff's supervisor by "control[ing] resources," "conduct[ing] group meetings," and influencing Plaintiff's reviews and promotions. (*Id.* ¶ 26.)

Plaintiff alleges that El-Sayed sexually harassed him by expressing inappropriate sexual interest, flirting, and making sexual advances. (*Id.* ¶¶ 9-10, 16.) Plaintiff further alleges that El-Sayed sexually harassed him "right up to termination, including the last week of employment." (*Id.* ¶ 49.) Plaintiff also alleges that El-Sayed retaliated against Plaintiff for initiating an investigation against her by: (1) "assigning someone else to work with Plaintiff's teammates on the new product he was developing without telling him"; (2) causing false entries to be included in Plaintiff's 2012 mid-year appraisal and working with . . . [P]laintiff's new supervisor to place Plaintiff on a Performance Improvement Plan; (3) "trying to create as much stress, anxiety, humiliation, mental anguish, and embarrassment as possible in the hope that . . . [P]laintiff would resign"; and (4) wrongfully terminating Plaintiff. (*Id.* ¶¶ 24, 27-34, 52.) Additionally, Plaintiff asserts that El-Sayed retaliated against him for rejecting her sexual advances. (*Id.* ¶¶ 24, 48.) Plaintiff alleges that El-Sayed "continued to abuse her position [as] a functional supervisor by doing everything possible to undermine . . . Plaintiff's programs,"[4] which included "denying him access to meetings he needed to attend, denying him critical information he needed for his program, making up rules that eliminated his candidate, denying him access to his team . . . , asking others to do his assignment without telling him, and denying [him] resources needed." (*Id.* ¶ 48.)

---

[4] Plaintiff never specifically defines "programs." Based on the allegations in the Third Amended Complaint, it appears that Plaintiff is referring to how he "led many large cross functional and even large cross Strategic Business Unit (SBU) teams at DuPont." (Third Am. Compl. ¶ 6.)

2

Plaintiff alleges that El-Sayed created a hostile work environment and discriminated against Plaintiff by denying Plaintiff promotions for age-discriminatory reasons. (*Id.* ¶¶ 31, 53, 69.) Plaintiff also alleges that Defendant wrongfully terminated him. (*Id.* ¶¶ 52, 73.) Finally, Plaintiff alleges that Defendant breached two contracts: (1) the first contract formed when Human Resources promised Plaintiff that there would be no retaliation against him for participating in an investigation against El-Sayed, which Defendant purportedly breached by permitting retaliation against Plaintiff after Plaintiff initiated an investigation against El-Sayed; and (2) the second contract formed when Plaintiff met with Human Resources and established an "agreed path to promotion that . . . [P]laintiff had followed," which Defendant purportedly breached by improperly denying him promotions. (*Id.* ¶¶ 21, 29, 31.) In sum, Plaintiff brings the following five claims against Defendants: (1) Sexual Harassment under New Jersey Law Against Discrimination ("NJLAD"); (2) Retaliatory Harassment under NJLAD; (3) Hostile Work Environment – Age Discrimination under NJLAD; (4) Wrongful Termination under NJLAD; and (5) Breach of Contract under New Jersey common law. (*Id.* ¶¶ 59-78.)

## II. Legal Standard

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

"Where, as here, a plaintiff is proceeding pro se, the complaint is 'to be liberally construed,' and, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Walsh v. Household Fin. Corp. III*, No. 15-4112, 2016 WL 6826161, at *2 (Nov. 17, 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Id.* (quoting *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010)).

### III. Discussion

#### A. Statute of Limitations

In the Third Circuit, a "[statute of] limitations defense may be raised on a motion under Rule 12(b)(6) . . . if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). NJLAD claims are subject to a two-year statute of limitations. *Montells v. Haynes*, 627 A.2d 654, 659 (N.J. 1993). Under the Continuing Violation Doctrine, "[h]owever, when the complained-of conduct constitutes 'a series of separate acts that collectively constitute one unlawful employment practice,' the entire claim may be timely if filed within two years of 'the

4

date on which the last component act occurred.'" *Alexander v. Seton Hall Univ.*, 8 A.3d 198, 203 (N.J. 2010) (citation omitted).

Here, Plaintiff filed his original Complaint on April 28, 2016,[5] thereby rendering allegations of incidents prior to April 28, 2014 outside of the statutory period. Plaintiff alleges the following incidents within the statutory period: (1) when El-Sayed came into Plaintiff's office and said that he "still looked good to her"; (2) Defendant's continued unlawful retaliation against Plaintiff for initiating an investigation against El-Sayed for sexually harassing him; (3) Defendant's continued age discrimination by denying Plaintiff promotions and placing Plaintiff on a Performance Improvement Plan; (4) an incident in the winter of 2014 where "El-Sayed bent over a desk and simulated sex so the Plaintiff could watch"; and (5) Plaintiff's wrongful termination on May 8, 2014. (Third Am. Compl. ¶¶ 47, 49, 52-53.)

### B. Sexual Harassment – Count One

With respect to Count One, Defendant argues that Plaintiff's allegations that fall within the statute of limitations fail to state a sexual harassment claim under NJLAD. (Def.'s Moving Br. 12-16, ECF No. 22-1.) A sexual harassment claim under NJLAD may be based on allegations of quid pro quo sexual harassment or hostile work environment. *See Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993). "Quid pro quo sexual harassment occurs when an employer attempts to make an employee's submission to sexual demands a condition of his . . . employment." *Id.* A quid pro quo sexual harassment claim "involves an implicit or explicit threat that if the employee does not

---

[5] Defendant suggests that the Court should utilize the filing date of Plaintiff's First Amended Complaint, May 2, 2016, for the purposes of determining the statutory window. (Def.'s Moving Br. 13 n.3.) Defendant, however, provides no reason why the Court should disregard the filing date of the original Complaint. (*See id.*) In contrast, Plaintiff states that the only differences between the original Complaint and the First Amended Complaint were corrections of typographical errors. (Pl.'s Opp'n Br. 43.) In light of the parties' minimal discussion, the Court utilizes the filing date of the original Complaint, April 28, 2016, to determine the statutory period.

accede to the sexual demands, he . . . will lose his . . . job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences." *Id.* Here, Plaintiff alleges that, "[a]s retribution for rejecting [El Sayed's] inappropriate sexual advances[,] . . . El-Sayed continued to abuse her position of functional supervisor" and denied Plaintiff access to meetings, information, and his team throughout the statutory period. (Third Am. Compl. ¶ 48.) Plaintiff also alleges that "if [he] gave . . . El-Sayed the relationship she wanted[,] her harassment would have stopped, [he] would have gotten the promotions he had been promised and earned, and he would still have a job." (*Id.* ¶ 50.) The Court, therefore, finds that Plaintiff has adequately pled the elements of a quid pro quo sexual harassment claim under Count One.

The Court also finds that Plaintiff adequately pleads a hostile work environment claim under Count One. To state a claim for hostile work environment based on sexual harassment, a plaintiff must plead: (1) the incident "would not have occurred *but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable* [person] believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive*." *Lehmann*, 626 A.2d at 453. "When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied." *Id.* at 454. "Thus[,] when a plaintiff alleges that [he] has been subjected to sexual touchings or comments . . . [he] has established that the harassment occurred because of [his] sex." *Id.* This standard "applies to sexual harassment of women by men, men by women, men by men, and women by women." *Id.* Here, the alleged conduct consisted of sexual behavior and comments. (Third Am. Compl. ¶¶ 49, 52.) The Court, therefore, finds that Plaintiff sufficiently alleged the first factor of a hostile work environment claim.

Next, the Court must consider whether Plaintiff has adequately pled that El-Sayed's conduct was severe or pervasive. *Lehmann*, 626 A.2d at 453. When analyzing this element:

6

> rather than considering each incident in isolation, courts must consider the cumulative effect of the various incidents, bearing in mind "that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes."

*Id.* at 454 (citation omitted). Repeated incidents and high frequency of the incidents create a strong claim for a hostile work environment. *Id.* Here, Plaintiff sets forth two specific incidents that occurred within the statutory period and five specific incidents that occurred from 2011 to 2013.[6] (Third Am. Compl. ¶¶ 10, 13-14, 46-47, 49.) Plaintiff also generally alleges that there was a pattern of "unwanted sexual advances and flirtations" that continued from before the statutory period and into the statutory period. (*Id.* ¶ 49.) Considering the totality of the circumstances, the Court finds that Plaintiff's allegations are sufficient with respect to the second element.

In reviewing the third and fourth elements together, the Court must find that the sexual harassment incident was severe or pervasive enough to "make a reasonable [person] believe that the conditions of employment are altered and the working environment is hostile or abusive." *Lehmann*, 626 A.2d at 453. Here, for the reasons set forth with respect to Plaintiff's quid pro quo sexual harassment claim, the Court finds that Count One satisfies the third and fourth elements of a hostile work environment sexual harassment claim. *See id.* at 457 ("[O]nly claims based on the idiosyncratic response of a hypersensitive plaintiff to conduct that is not objectively harassing would be barred by the reasonable [man] standard.").

---

[6] The two alleged incidents that occurred within the statutory period are when El-Sayed told Plaintiff that she found him attractive and when El-Sayed "simulated sex" so that Plaintiff could watch. (*Id.* ¶¶ 47, 49.)

1. Continuing Violation Doctrine as to Count One

In addition to the allegations pled within the statutory period, Plaintiff further argues that he brings viable claims for sexual harassment for incidents that occurred outside of the statutory period pursuant to the Continuing Violation Doctrine. (Pl.'s Opp'n Br. 15-35, ECF No. 25.) Under the Continuing Violation Doctrine, acts that violate NJLAD "that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Handelman v. New Jersey*, No. 16-2325, 2016 WL 3691976, at *6 (D.N.J. July 12, 2016) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013)).

Here, Plaintiff alleges that El-Sayed sexually harassed him on at least seven occasions from 2011 to 2014. (Third Am. Compl. ¶¶ 10, 13-14, 46-47, 49.) Plaintiff asserts that within the statutory period, El-Sayed told him that she found him attractive and "simulated sex" so that he could watch. (*Id.* ¶¶ 47, 49.) Plaintiff alleges that outside of the statutory period, El-Sayed touched him, positioned herself directly on top of him, and stood in the doorway of his office and posed provocatively. (*Id.* ¶¶ 10, 13-14, 46.) Based on the Court's review of the Third Amended Complaint, the Court finds that these alleged incidents are adequately related to trigger the Continuing Violation Doctrine and to survive dismissal at this stage of the proceedings.

2. Employer Vicarious Liability as to Count One

Under Count One, Plaintiff seeks to hold the employer liable for El-Sayed's sexual harassment. "[W]here a plaintiff seeks to hold [his] employer liable for a hostile environment created by co-workers, '[he] must show that the employer knew or should have known of the harassment . . . and failed to take prompt remedial action.'" *Reynolds v. Atl. City Convention Ctr. Auth.*, No. 88-4232, 1990 WL 267417, at *16 (D.N.J. May 26, 1990), *aff'd*, 925 F.2d 419 (3d Cir.

1991). A "[p]laintiff can demonstrate knowledge by the employer by showing that [he] complained to management of harassment." *Id.* Here, in a meeting that took place on November 3, 2011, Plaintiff complained to Human Resources about El-Sayed's sexual harassment. (Third Am. Compl. ¶¶ 20-22.) In October 2013, Plaintiff sent e-mail correspondence to Human Resources and hired an attorney to send a written complaint to Defendant. (*Id.* ¶ 43.) In January 2012, after Plaintiff initiated the investigation against El-Sayed for sexual harassment, Plaintiff was assigned a new supervisor, but Defendant permitted El-Sayed to remain as Plaintiff's functional supervisor who could "control[] resources," "conduct[] group meetings," and influence Plaintiff's reviews and promotions. (*Id.* ¶¶ 25-26.). Based on these facts, Defendant knew or should have known of the harassment and failed to take remedial action. Plaintiff, therefore, pleads sufficient facts to support a claim of sexual harassment and Defendant's Motion to Dismiss is denied as to Count One.

### C. Unlawful Retaliation – Count Two

Under Count Two, Plaintiff alleges an unlawful retaliation claim against Defendant. It is an unlawful employment practice "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint." N.J.S.A. § 10:5-12(d). To demonstrate a prima facie case of unlawful retaliation, a plaintiff must establish that: "(1) claimant engaged in a protected activity known to the employer, (2) claimant thereafter was subjected to an adverse employment decision by the employer, and (3) there was a causal link between the two." *Jamison v. Rockaway Twp. Bd. of Educ.*, 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990) (citations omitted).

Here, Defendant's alleged retaliation was in response to Plaintiff's initiation of an investigation against El-Sayed for sexual harassment, and commenced "almost immediately" after

9

Plaintiff initiated the investigation. (Third Am. Compl. ¶¶ 24, 34, 52.) In addition to Defendant's purported failure to promote Plaintiff and Plaintiff's wrongful termination, Defendant's alleged retaliation consisted of, *inter alia*: (1) "assigning someone else to work with Plaintiff's teammates on the new product he was developing without telling him"; (2) causing false entries to be included in Plaintiff's 2012 mid-year appraisal and working with . . . [P]laintiff's new supervisor to place Plaintiff on a Performance Improvement Plan; and (3) "trying to create as much stress, anxiety, humiliation, mental anguish, and embarrassment as possible in the hope that . . . [P]laintiff would resign." (*Id.* ¶¶ 24, 27-34, 52.) Accordingly, and liberally construing the Third Amended Complaint, the Court finds that Plaintiff sufficiently alleged all three factors of unlawful retaliation.

1. Continuing Violation Doctrine as to Count Two

The Continuing Violation Doctrine does not apply to discrete acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Roa v. Roa*, 985 A.2d 1225, 1231-33 (N.J. 2010) (adopting the United States Supreme Court's reasoning in *Morgan*). Retaliation claims, however, are not necessarily based on discrete acts, and "can take the form of a hostile work environment." *Handelman v. New Jersey*, No. 16-2325, 2016 WL 3691976, at *8 n.7 (D.N.J. July 12, 2016); *see also Paulino v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. A-0462-11T2, 2012 WL 4661487, at *2 n.3 (N.J. Super Ct. App. Div. Oct. 4, 2012) (applying the Continuing Violation Doctrine where "hostile work environment claims and claims of adverse employment actions are intertwined").

Here, Plaintiff alleges that Defendants' retaliatory conduct, as set forth above, commenced before the statutory period and continued into the statutory period until his termination. (Third

10

Am. Compl. ¶ 52.) Upon liberally construing Plaintiff's pleading, the Court finds that Plaintiff has adequately pled non-discrete acts of retaliation to trigger the Continuing Violation Doctrine.

2. Employer Vicarious Liability as to Count Two

Plaintiff seeks to hold Defendant, the employer, liable for El-Sayed's unlawful retaliation. As discussed above, Plaintiff complained to Human Resources about El-Sayed's sexual harassment in a meeting that took place on November 3, 2011. (Third Am. Compl. ¶¶ 20-22.) Additionally, Plaintiff expressed concern that El-Sayed and Defendant would retaliate against Plaintiff for initiating an investigation. (Id. ¶ 21.) When Plaintiff experienced El-Sayed's first retaliatory act, Plaintiff "reiterated the agreement with HR regarding non-retaliation and expressed his hope that his request for promotion . . . would be put back on track." (Id. ¶ 24.) In January 2012, after Plaintiff initiated the investigation against El-Sayed for sexual harassment and confronted Human Resources about his retaliation experience, Plaintiff was assigned a new supervisor. (Id. ¶ 25.) Defendant, however, permitted El-Sayed to remain as Plaintiff's functional supervisor who could "control[] resources," "conduct[] group meetings," and influence Plaintiff's reviews and promotions. (Id. ¶¶ 25-26.) Based on these allegations, Plaintiff has adequately pled that Defendant knew or should have known of the unlawful retaliation and failed to take remedial action. For these reasons, Defendant's Motion to Dismiss is denied as to Count Two.

D. **Hostile Work Environment Age Discrimination – Count Three**

Under Count Three, Plaintiff alleges a claim for hostile work environment based on age discrimination under NJLAD. NJLAD states, in pertinent part:

> It shall be an unlawful employment practice, or . . . unlawful discrimination . . . [f]or an employer . . . to refuse to hire or employ or to bar or to discharge . . . , unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.J.S.A. § 10:5-12. To state a claim under NJLAD for hostile work environment based on age discrimination, a plaintiff must allege that the complained-of conduct: "(1) would not have occurred but for the employee's [age], and was (2) severe or pervasive enough to make a[](3) reasonable person believe that (4) the conditions of employment were altered and that the working environment was hostile or abusive." *Incorvati v. Best Buy Co.*, No. 10-1939, 2010 WL 4807062, at *9 (D.N.J. Nov. 16, 2010) (quoting *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 625 (N.J. 2002)). Courts look to "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Shepherd*, 803 A.2d at 622 (citation omitted).

Plaintiff has not adequately pled an age discrimination claim or a hostile work environment claim based on age discrimination. In the Third Amended Complaint, Plaintiff alleges that he was denied promotions in 2002, 2008, and 2012 because of his age. (Third Am. Compl. ¶ 53.) These allegations are bare and fall outside the statutory period. The allegations that fall inside the statutory period are similarly sparse. Plaintiff alleges that he was terminated because of his age. (*Id.*) Plaintiff further alleges that "[t]he same age discriminatory reasons given for denying promotion[7] . . . continued through[out] the statute-of-limit[ations] window." (*Id.*) Plaintiff, however, never alleges that his position or a position for which he was denied a promotion was

---

[7] Plaintiff alleges that "because of his age, the Plaintiff understood that nothing he did would [be] recognized by promotion because of his age" and "age played a role in being placed on the bogus and pre-textual Performance Improvement Plan. The business had made a choice to get rid of the Plaintiff partly because he was the oldest at his site and was asking for just three more years of employment instead of getting rid of Ms. El-Sayed who was about 13 years younger and had many more years of service ahead of her." (Third Am. Compl. ¶ 53.)

filled by a younger candidate. *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 301 (3d Cir. 2004) (requiring "a showing that the plaintiff was replaced with a candidate sufficiently younger to permit an inference of age discrimination"). Additionally, with respect to a hostile work environment claim, Plaintiff does not provide any allegations as to how Defendant's conduct altered the conditions of employment and created a working environment that was hostile or abusive.[8] For these reasons, Defendant's Motion to Dismiss Count Three is granted.

### E. Breach of Contract – Count Five

Under Count Five, Plaintiff pleads a breach of contract claim against Defendant. NJLAD, however, "bars common law claims based on the same operative facts as . . . the [NJ]LAD claim." *Taylor v. Lincare, Inc.*, No. 15-6284, 2016 WL 3849852, at *8 (D.N.J. July 15, 2016) (citation omitted). "Therefore, '[w]here the factual predicates for the common law claims and the NJLAD claims are the same and the remedies sought are the same, the common law claims are barred.'" *Id.* (alteration in original) (citation omitted).

Here, Plaintiff's breach of contract claims are based on the same operative facts and seek the same remedies as his NJLAD claims. Plaintiff alleges: (1) the first contract was allegedly formed when Human Resources promised Plaintiff that there would be no retaliation against him for participating in an investigation against El-Sayed, which Defendant breached by permitting retaliation against Plaintiff after Plaintiff initiated an investigation against El-Sayed; and (2) the second contract was formed when Plaintiff met with Human Resources and established an "agreed path that Plaintiff had followed," which Defendant breached by improperly denying his promotion. (*Id.* ¶¶ 21, 29, 31, 47.)

---

[8] Moreover, even if any of Plaintiff's allegations stated a claim for age discrimination, the Continuing Violation Doctrine does not apply to discrete acts. *Morgan*, 536 U.S. at 115.

Plaintiff's first breach of contract claim merely alleges a breach of a promise not to retaliate. (*Id.* ¶ 21.) Unlawful retaliation, however, is a claim under NJLAD as set forth above. Additionally, the Court finds that Plaintiff's second breach of contract claim alleges a failure to promote. (*Id.* ¶ 31.) The failure to promote based on discrimination and unlawful retaliation is also claim under NJLAD, as set forth above. Plaintiff's breach of contract claim, therefore, is barred under New Jersey law. Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Count Five.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July 21st, 2017